# CASES

# APPELLATE COURTS OF ILLINOIS

## SECOND DISTRICT—MAY TERM, 1893.

## School Directors, etc., v. National School Furnishing Company.

1.  OFFICERS—*De Jure and De Facto.*—Where there is but one office, there can not be an officer *de jure* and an officer *de facto*, both in possession of the office at the same time. Where one rightfully entitled to the office is discharging its functions and actually in possession, the acts of another obtruding himself into the office are void.

2.  OFFICERS—*Must be Elected at a Poll Within the State.*—A person can not be legally elected to the office of school director for a district in Illinois, by persons voting for him in some other State. The right of the elector to vote outside of the State for an office within the State is not recognized by either our constitution or statute, both requiring that he shall have resided within the State one year, in the county ninety days, and in the district where he seeks to cast his vote thirty days.

3.  SCHOOL DISTRICTS—*On State Lines.*—A school district consisting of a small portion of territory adjoining the State line and organized as a school district under the laws of Illinois, attached itself to a school district in the State of Wisconsin. The people of the district held an election for directors at a place over the line and within the State of Wisconsin. *It was held,* that the directors elected at such election had no legal right to the office and that the election was void.

4.  SCHOOL DIRECTORS—*Election of Officers.*—The statutory provision of our State never contemplated that an election for school directors should be held elsewhere than within the boundaries of the district.

5.  SCHOOL DIRECTORS—*Officers De Facto.*—School directors elected at an election, invalid by reason of some informality in calling it, but declared elected at said election, become directors *de facto,* and their acts

(254)

School Directors v. National School Furnishing Co.

as such must be regarded as valid, especially so, where there are not other directors *de jure* in existence at the same time.

6. JUDGMENTS—*Obtained by Fraud.*—Where a judgment is obtained by fraud, a court of equity will restrain its collection; but where the debt upon which the judgment is obtained is a valid one and the party obtaining the judgment has acted in good faith and obtained legal service upon the defendant giving the court jurisdiction, a court of equity will not interfere.

7. COURTS—*Jurisdiction.*—Where a person held an order against a school district for school furniture sold it, upon which he brought a suit before a justice of the peace and obtained service of summons upon the person acting as clerk for the only board of directors really acting as such, and acting in good faith obtained his judgment without fraud or collusion, a court of equity should decline to interfere or restrain its collection.

8. REMITTITUR—*Equity Jurisdiction.*—In a proceeding to restrain the collection of a judgment, the court ordered it to be reduced $11.34, without a cross-bill, but the defendant had asked for such reduction in his answer. *It was held*, that the action of the court should not be considered as irregular, and if it were so, the person in whose favor the reduction was made, should not be heard to complain.

Memorandum.—Bill for injunction. Error to the Circuit Court of Boone County; the Hon. CHARLES KELLUM, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 12, 1893.

## STATEMENT OF THE CASE.

Plaintiffs in error filed their bill to enjoin the collection of a certain judgment for $119.34, rendered by a justice of the peace against their school district on an order issued to the National School Furnishing Company in payment for school furniture. The grounds for the relief sought were that the persons who purchased the furniture and issued the order were not at the time school directors *de jure* or *de facto;* that the justice of the peace who entered the judgment had not jurisdiction of the persons of the directors, and that the judgment was obtained by fraud and collusion. The defendants, after denying these averments in the answer, remitted of the judgment $11.34, thereby reducing it to $108, the face of the order.

The Circuit Court referred the cause to the master in chancery for proofs and findings. The master heard the

proofs and reported to the court that the equities were with the defendant and recommended a dismissal of the bill. The court confirmed the report, held the judgment, after reducing it to $108, to be valid, and decreed that the complainants should pay the costs.

PLAINTIFFS' BRIEF, N. C. WARNER, ATTORNEY.

Where there are two boards of school trustees, each claiming that the other is unlawful and each proceeding as if the other did not exist, the board which has no legal right to the office can not become *de facto* officers so as to validate their acts. State v. Blossom, 19 Nev. 312; 10 Pac. Rep. 430; Burke v. Cuttler, 78 Iowa, 299; Steinbach v. State ex rel. Madison Township, 38 Ind. 490; Throop, Public Officers, Sec. 641.

While the general rule is that the acts of *de facto* officers can not be inquired into collaterally, yet, where there is a director *de jure* in possession of the office, there can not be a *de facto* incumbent at same time. State v. Blossom, 19 Nev. 312; Cohn v. Beal, 61 Miss. 399; Conover v. Devlin, 15 Howard N. Y. Pr. Rep. 475.

Where there is but one office, there can not be an officer *de jure* and an officer *de facto*, both in possession of the office at the same time. State v. Blossom, 19 Nev. 312; Boardman v. Halliday, 10 Paige, Chy. (N. Y.) 232; Meachem's Public Offices and Officers, Secs. 322, 323, 324.

DEFENDANT'S BRIEF, CHARLES E. FULLER AND ROBERT W. WRIGHT, ATTORNEYS.

In determining the question raised by the pleadings, the election of May 2, 1885, is of importance, as it is by virtue thereof that we claim that Swart and Skall were directors at the time of purchasing the school furniture in question. We believe that by virtue of this election these men became and were *de jure* directors, but insist that that is not material, and that it *is* material, and that it will be sufficient for the purpose of this suit, if it should be determined that they were *de facto* directors at the time of purchasing the fur-

niture. The official acts of *de facto* directors are always regarded as worthy of full faith and credit, and the same can not be collaterally examined. Barlow v. Standford, 82 Ill. 298; Mapes v. People, 69 Ill. 523; Trumbo v. People, 75 Ill. 561; Golden v. Bressler, 105 Ill. 419; People v. Weber, 86 Ill. 283.

The acts of officers *de facto* are as valid and effectual where they concern the public, or the rights of third persons, as though they were officers *de jure*, and the title to an office can not be decided in a collateral suit, but only in a direct proceeding for that purpose. Sullivan v. State of Illinois, 66 Ill. 75; Sharp v. Thompson, 100 Ill. 447; McInstry v. Tanner, 9 Johns. 135; Trustees, etc., v. Hills, 6 Cow. 23.

All votes and proceedings of persons professing to act in the capacity of corporations, when assembled beyond the bounds of the State granting the charter of the corporation, are wholly void. Angell and Ames on Corporations, 8th Ed., Sec. 498; Miller v. Ewer, 27 Me. 509; Freeman v. Machias W. P. Co., 38 Me. 343.

The first and most general rule as to the place where stockholders may hold corporate meetings, is that the place of meeting must be within the boundaries of the State which created the corporation. Cook on Corporations, 2d Ed., Sec. 591.

It is a rule to which there are very few exceptions, that an election held at an improper place, will be held absolutely void, without proof of any fraud or injury. 6 Am and Eng. Enc. of Law, 323.·

A court of equity will not interfere to enjoin the collection of a judgment at law, until the party complaining has exhausted all his resources at law, by appeal or otherwise. Wilkinson v. Rewey, 18 N. W. Rep. 513; Crandall v. Bacon, 20 Wis. 639; Bibend v. Kreutz, 20 Cal. 109; Hart v. Lazaron, 46 Ga. 396.

If a party, by failing to appeal, or by prosecuting an appeal in a defective or insufficient mode, loses his remedy at law, he can not proceed in equity by injunction. Long v. Smith, 39 Tex. 160; Flanneken v. Wright, 1 So. Rep. 157.

Equity will not interfere to enjoin a judgment, unless it is shown that the party has exhausted every means of defending the case or obtaining redress at law.   Wells v. Wall, 1 Oreg. 295; Nevins v. McKee, 61 Tex. 412.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

There seems to be no controversy over the facts in this case.   Briefly stated they are as follows:

For a long time prior to 1885, School District No. 6, Town 46, N., R. 4 E., in Boone county, which embraced a small territory immediately south of the Wisconsin State line, had been joined with a school district north of the line in Wisconsin.   No school had ever been held within the borders of the district, but its scholars had attended the school in a house upon the Wisconsin side, a short distance north of the line.   For several years directors had been elected at elections held at the school house.   Early in that year, some question arising as to the validity of such elections, held, as they were, outside of the State, an election for directors was called and held within the district on the 2d of May, at which every voter in the district but one participated.   A. C. Swart, Martin Skall and Luke Bird were declared elected.   It was determined by lot that Swart should serve for three years, Skall for two years and Bird for one year.

There was some dissatisfaction over this election, and afterward, July 18, 1883, another was held within the bounds of the district for the purpose of electing two directors to fill the place of one Nels Nelson, elected at the school house in Wisconsin in April, 1882, and Michael Skall, elected in April, 1883, who had, just before the election of May 2, 1885, resigned.   At that election John Landon and D. W. Groesbeck were declared elected.

The persons participating in that election proceeded upon the theory that the election of May 2d was void.   There then became two boards, each claiming to be the legal board of directors—the one by virtue of the election in May and the other by virtue of the election in July, and

one held at the school house in Wisconsin in April, 1884, at which J. T. Kenyon was elected. Each assumed to act. The one elected in May purchased school furniture from appellee, and on the 31st of July, 1885, issued an order in payment of the same, $108. Soon after, *quo warranto* proceedings were instituted against the individuals constituting the two alleged boards, pending which they all resigned, and abandoned all claim to the office.

On the 30th of January, 1886, at an election called by the county superintendent of schools, John Landon, Charles Chester and J. T. Kenyon, were elected directors. Landon held the short term, and it expiring on the 24th of April, 1886, Martin Skall was elected as his successor for a term of three years. A few months after, Chester resigned. Kenyon and Skall being unable to agree upon the time for holding an election to fill the vacancy, Skall called one for that purpose for the 25th of December, 1886, at which only himself, A. C. Swart and Michael Skall attended and voted. Swart was declared elected. At an election held on the 22d of January, 1887, under call of the township treasurer, E. H. Groesbeck was declared elected to fill the vacancy. There again appeared in the field two boards — the Swart-Skall board claiming that Swart, Skall and Kenyon were the legally elected directors, and the Kenyon-Groesbeck board claiming that Kenyon, Groesbeck and Skall were the legal directors. Kenyon enjoyed the distinction of belonging to both boards, but declined to act in but one. The same is true of Skall. Groesbeck was the president and Kenyon the clerk of one board; while Skall was the president and Swart the clerk of the other.

Each gave notice of an election for the 16th of April, 1887, to elect a director to succeed Kenyon. At the election held by Groesbeck and Kenyon, Kenyon was declared elected. At the election held by Skall and Swart, Michael Skall was declared elected. In September following *quo warranto* proceedings were commenced against Swart and Michael Skall to test their right to the office which in February, 1889, resulted in a judgment of ouster against them.

On the 4th of January, 1888, suit was commenced against

the directors of the district by default in error on the school order for $108, and summons was served upon Swart as clerk of the board. Judgment was rendered for $119.34, face of the order and interest.

It does not appear that defendant in error or its agent were guilty of any fraud or collusion in the sale of the furniture, the obtaining of the order or in recovering judgment.

For aught that appears in the record the furniture was. sold in good faith. The persons acting as directors took possession of it, and placed it in a school house provided by them for the district. At the school taught in the house, ᚁ at which nearly all the children of school age have ᚁed, the furniture has been used by the school and ᚁcher.

Where there is but one office, there can not be an officer *de jure* and an officer *de facto*, both in possession of the office at the same time. Where one, rightfully entitled to the office, is discharging its functions and actually in possession, the acts of another obtruding himself into the office are void.

The validity of the school order depended entirely upon whether, at the time it was issued, July 31, 1885, Kenyon, Landon and Groesbeck were the lawfully elected directors of the district, because if they were, inasmuch as they had assumed to act as such officers, acts of Skall and Swart in purchasing furniture and issuing orders would be void. Their right to hold the office depended upon the validity of the elections held in Wisconsin in 1883 and 1884. Kenyon claimed to hold by virtue of an election held in that State in 1884, and Groesbeck by virtue of an election to fill an unexpired term of a director elected in that State in 1883. In fact the election held on the 18th of July, 1885, was held upon the theory that the elections which had been held in former years in Wisconsin were valid, and that the one held in May, 1885, was void. We are of the opinion that a person can not be legally elected to the office of school director for a district in Illinois by persons voting for him in some other State. The right of an elector to vote outside of the State

for an office within the State is not recognized by either our constitution or statute. Both require that he shall have resided in the State one year, in the county ninety days and in the district where he seeks to cast his vote thirty days. Sec. 33, Chap. 122, Starr and Curtis' Statute, requires that the first election held in a district shall be "held at some convenient time and place within the boundaries of such newly organized district." Sec. 1 of a more recent act, in force July 1, 1883, providing for the formation of districts containing less than four hundred inhabitants, to be carved out of other districts, provides that the trustees of the township shall, when the district is organized, " order an election of a school board in the newly organized district." Sec. 42 of the general act relating to public schools reads: " The annual election of school directors shall be on the third Saturday of April, when one director shall be elected in each district." All these statutory provisions show that it was never contemplated by the legislature that the elections should be held elsewhere than within the boundaries of the district. The so-called election of Kenyon in Wisconsin in 1884 was void. There was no such vacancy existing in the office of school director as that to which Groesbeck assumed to be elected, because the so-called election of Michael Skall in 1883 was void.

We are of the opinion that the election of May 2, 1885, was valid, but even if it should be held not, by reason of some informality in the calling of it, the person then declared elected became director *de facto*, and their acts as such must be regarded as valid, because there were not other directors *de jure* at the same time.

We do not think that the election held on the 25th of December, 1886, at which Swart was declared elected, valid. There was, too, an adjudication on his right to hold the office by virtue of that election in the *quo warranto* proceedings against him and Michael Skall, which, of course, concludes any further inquiry upon that subject. His acts as clerk of the board under that election could be considered as characterizing the conduct of defendant in error under the charge that it had acted fraudulently and in collusion

with Swart and Michael Skall in procuring the judgment sought to be obtained.

Defendant in error held a legal order, issued in payment of furniture sold to and used by the district. Swart, and those with whom he was acting, had held a school within the district, at which nearly all the children of school age had attended; in fact, the only school which had been conducted within the district.

There are other parties claiming to be directors who were opposing them, it is true, but they were conducting no school, were not in possession of the school house or school furniture, and had not, to appearances, assumed any active discharge of duty as directors.

In obtaining service upon Swart in the suit instituted before the justice, defendant in error pursued the only course which appeared to it as the proper one to obtain jurisdiction. The record is barren of proof that defendant in error was guilty of fraud or collusion in procuring the judgment.

We recognize the principle that where a judgment is obtained by fraud, a court of equity will restrain its collection. But where the debt on which the judgment is based is a valid one, when the party obtaining the judgment has acted in good faith and obtained service on one acting as was Swart in this case, clerk for the only board really acting as directors, a court of equity should not interfere. High on Injunctions, Sec. 129 and 131; Crandell v. Bacon, 20 Wis. 639; Sanchez v. Carridga, 31 Cal. 170; Lockridge v. Lyon, 68 Ga. 137.

The point is urged by plaintiff in error that the Circuit Court erred in decreeing that the judgment be reduced $11.34, without a cross-bill. Defendant in error asked for such reduction in its answer. The justice had erroneously allowed interest on the order. It was not affirmative relief asked against plaintiff in error, and did not require a cross-bill. We can not understand how that action of the court could be considered as irregular even; and if it were, certainly, plaintiff in error could not complain.

The decree should be affirmed.